## Case No. 17,247.

WASHINGTON MILLS v. RUSSELL.

[Holmes, 245; [1] 18 Int. Rev. Rec. 203.]

Circuit Court, D. Massachusetts. Aug., 1873.

### IMPLIED REPEAL OF STATUTE—IMPORTS OF WOOL.

By the sixth section of the act of March 3, 1865 (13 Stat. 493), an additional duty of ten per cent. was imposed on certain wools imported from certain places. The first section of the act of March 2. 1867 (14 Stat. 559), provided that from and after the passage of the act, "in lieu of the duties now imposed by law," certain specified duties should be assessed on all unmanufactured wool, &c., "imported from foreign countries." Held, that the former act was repealed by the act of 1867; and that after the passage of the latter, only the duty specified in it could be assessed on imported wool.

This was an action against [Thomas Russell] the collector of Boston to recover certain duties exacted by him on imported wools, and paid by the plaintiff under protest. The case was heard by the court on an agreed statement of facts.

Charles Levi Woodbury, for plaintiff.
F. W. Hurd, for defendant.

SHEPLEY, Circuit Judge. The Washington Mills imported into Boston from Liverpool, one hundred and sixteen bales wool by steamship Batavia, Jan. 27, 1871; twenty-three bales by steamship Parthia, Feb. 27, 1871; fifty-seven bales by steamship Batavia, March 13, 1871; sixty-eight bales by steamship Tripoli, March 30, 1871. The wool was produced in Australia. It was invoiced, and was of less value than thirty-two cents per pound at the last port whence it was exported to the United States. The collector exacted upon all this wool, as duty, ten cents per pound and eleven per cent ad valorem, and an additional duty of ten per cent ad valorem, on the ground that it was "of the growth or produce of countries east of the Cape of Good Hope." Plaintiff protested against the payment of this additional duty; and also appealed to the secretary of the treasury, who sustained the collector. This action was seasonably brought, in conformity with law, to recover the additional duties thus paid.

The sixth section of the act of March 3, 1865 (13 Stat. 493), provides "that there shall hereafter be collected and paid on all goods, wares. and merchandise of the growth or produce of countries east of the Cape of Good Hope (except raw cotton, and · raw silk as reeled from the cocoon, or not further advanced than tram, thrown, or organzine), when imported from places west of the Cape of Good Hope, a duty

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

of ten per centum ad valorem, in addition to the duties imposed on any such article when imported directly from the place or places of their growth or production." A similar provision existed in the act of 1864, § 18 (13 Stat. 216), with the distinction that raw cotton only was excepted.

Prior to the act of March 2, 1867 (14 Stat. 559), the duties on wool had been assessed on its value at the last port whence exported to the United States, and on wool above a certain value an ad valorem duty was assessed in addition to the specific duty. Wool was then also subject to the additional duty of ten per cent ad valorem when it was the produce of countries east of the Cape of Good Hope, and imported from places west of the Cape of Good Hope. The act of 1867 greatly increased the duties on wool. It did not do this by imposing additional duties, by name, which should have the quality of being added to duties provided for by former acts and to be ascertained in former modes, but it repealed all prior modes of ascertainment, and substituted an entirely new mode of classification of the wool and ascertainment of the duty. It divided all wools, hair of the alpaca, goat, and other like animals, for the purpose of fixing the duties to be charged thereon, into three classes: First, clothing-wool; second, combing-wools; third, carpet-wool and other similar wools. This classification was made on the basis of the breed of the sheep as known to wool growers and manufacturers, as will be seen by the statute description of "class one," under which the wool in question is classed; "clothing-wool, that is to say, merino, mestiza, metz, or metis wools, or other wools of merino blood, immediate or remote; down clothing-wools, and wools of like character with any of the preceding, including such as have been heretofore usually imported into the United States from Buenos Ayres, New Zealand, Australia, Cape of Good Hope, Russia, Great Britain, Canada, and elsewhere, and also including all wools not hereafter described or designated in classes two and three."

The first section of the act of 1867 provides "that from and after the passage of this act, in lieu of the duties now imposed by law on the articles mentioned and embraced in this section, there shall be levied, collected, and paid on all unmanufactured wool, hair of the alpaca, goat, and other like animals, imported from foreign countries, the duties hereinafter provided."

The expression "in lieu of the present duties," or "in lieu of the duties now imposed by law," is an expression frequently used in revenue statutes when the intention of congress is to repeal the duties previously in force and to substitute new rates of duty. No language could more clearly express the intent of congress; and these terms have come to be considered the peculiarly apt words of revenue repeal. In the case of Gossler v. Goodrich [Case No. 5,631], May term, 1867, before Justice Clifford and Judge Lowell, the court say, in allusion to the use of the same terms in a reve-

nue statute, "Terms more explicit and comprehensive could not be employed, and the provision neither contains any exception, nor admits of any, without the necessity of resorting to positive legislation." This is not a case where the rules respecting repeals of a statute by implication are applicable, or can be invoked, to aid in the interpretation of the statute. The repeal of the former act is not by implication, but by express terms of repeal. Had the act of March 2, 1867, simply imposed an additional rate of duty, or provided a new mode of ascertainment of value, without any express words of repeal, the ten per cent discriminating duty provided for by the act of 1865, being a part of the general revenue system, and not positively repugnant to the new enactment, would undoubtedly have continued in force as applicable to wool imported under the conditions described in the sixth section of that act. But when the act of 1867 provided a new tariff of duties on wool "imported from foreign countries" "in lieu of the duties now" (before that time) "imposed by law," it expressly repealed the discriminating as well as the other duties then imposed. A similar policy in relation to wool is continued in force by the third section of the act of June 6, 1872 (17 Stat. 232), which, re-enacting the ten per cent discriminating duty on goods produced east of the Cape, when imported from places west of it, expressly excepts "wool" from its operation. In the opinion of the court the discriminating duties were illegally exacted. Judgment is to be entered for the plaintiff for the amount paid, four thousand one hundred and seventy dollars and forty cents, with interest in gold, and costs. Judgment accordingly.